IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARC E. OLIVER, d/b/a GULF COAST ENVIRONMENTAL AND RECOVERY, And T.M. JEMISON CONSTRUCTION CO. INC. d/b/a JEMISON MARINE, INC., | : : | |
| Plaintiffs, | : | CA 11-0223-KD-C |
| MIDSOUTH BANK, N.A., Plaintiff/Counter-Defendant | : | IN ADMIRALTY *In Personam and In Rem* |
| vs. | : | |
| M/V BARBARY COAST, her engines, tackle, furniture, and appurtenances, etc., *In Rem*, and RODD CAIRNS, an individual, and ATCHAFALAYA MARINE, LLC, *In personam*, Defendants/Counter-Plaintiffs/ Third-Party Plaintiffs, | : : : | |
| vs. | : | |
| EAGLE RIVER TOWING, L.L.C., p/k/a or a/k/a EAGLE INLAND TOWING, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, LOUISIANA LIMESTONE & LOGISTICS, L.L.C., and CURTIS BUFORD, Third-Party Defendants. | : : : | |

**ORDER**

This matter is before the Court on Substitute Custodian Southern Marine's "Motion to Disburse Custodial Fees" (Doc. 121) and Intervenor-Plaintiff Midsouth Bank, N.A.'s Objection thereto (Doc. 137).

**I.   Background**

On July 19, 2011, Intervenor Plaintiff Midsouth Bank, N.A. ("Midsouth") filed a motion

1

requesting that the substitute custodian Southern Marine be required to furnish information and to perform certain acts (Doc. 54), to which the custodian responded (Doc. 73). On August 25, 2011, U.S. Magistrate Judge Cassady granted Midsouth's motion and ruled that the installation of a high water bilge alarm, the reasonable costs associated with an evacuation plan (for the vessel should Mobile be threatened by a hurricane or tropical storm) and any reasonable expenses associated with repairs (as required by the COTP before the vessel is allowed to be evacuated), were authorized as *in custodia legis* expenses. (Doc. 94). On August 26, 2011, Judge Cassady amended that Order to add, as an additional *in custodia legis* expense, the costs of the insurance premiums for the Great American insurance policy covering the vessel (not to exceed $19,000). (Doc. 98). On August 30, 2011, Midsouth filed an emergency motion for approval of *in custodia legis* expenses (Doc. 100), which Judge Cassady granted on August 31, 2011, ruling that the requested expenses for the removal of excessive water/oil mixture in the bilge by a certified oil collection facility and the installation of a fire-detection system were also authorized as *in custodia legis* expenses. (Doc. 101).

In sum, the expenses previously authorized by the Court as *in custodia legis* expenses consist of: 1) the installation of a high water bilge alarm; 2) the reasonable costs associated with an evacuation plan for the vessel; 3) any reasonable expenses associated with repairs required for evacuation; 4) the insurance premium expenses of the Great American insurance policy covering the vessel (not to exceed $19,000); 5) the removal of excessive water/oil mixture in the bilge by a certified oil collection facility; and 6) the installation of a fire-detection system.

On September 20, 2011, Midsouth filed the present motion seeking payment for *in custodia legis* expenses. (Doc. 117). While the parties were given the opportunity to do so (Doc.

125), no oppositions were filed in response to Midsouth's motion.

## II.  Discussion

*In Custodia Legis* expenses are expenses reasonably incurred during *custodia legis* (*i.e.*, post-arrest of a vessel). Standard Fed. Bank, N.A. v. M/Y PLEASURES, 2003 WL 22722077, *5 (S.D. Fla. Jul. 24, 2003).  See also Bender Welding & Machine Co., Inc. v. M/V SOVEREIGN OPAL, 415 F. Supp. 772, 773 (S.D. Ala. 1976).  As explained in Bunkers Intern. Corp. v. M/V ANASAZI, Slip Copy, 2010 WL 2330327, *1 (M.D. Fla. Jun. 9, 2010):

> Expenses in *custodia legis* are generally entitled to priority payment…a person or entity that furnishes goods or services to a vessel after it has been arrested does not acquire a maritime lien against the vessel; however, a district court sitting in admiralty has inherent equitable power to give priority to such claims…

Additionally, as set forth in Associated Metals and Minerals Corp. v. ALEXANDER'S UNITY MV, 41 F.3d 1007, 1018 (5th Cir. 1995) (cited by Dresdner Bank AG v. M/V OLYMPIA VOYAGER, 465 F.3d 1267, 1273 (11th Cir. 2006)):

> Generally, "services or property advanced to preserve and maintain the vessel under seizure, furnished upon authority of the court or of an officer of the court... should be allowed as *custodia legis* expenses."…Even if such expenditures are made absent a court order, " ' *custodia legis* ' expenses may be ordered by the court …if equity and good conscience so require."… *Turner & Blanchard, Inc. v. The S.S. Emilia,* 322 F.2d 249, 250 (2d Cir.1963) (holding that " 'service rendered to the ship, in the aid of cargo, necessarily inured to their [lienors] benefit' "and were properly considered *custodia legis* expenses (alteration in original)); *Morgan Guar. Trust,* 593 F.Supp. 1004, 1010 (S.D.N.Y.1984) (finding that cargo discharge costs necessary to minimize the possibility of additional claims against the vessel and to maximize the sales price of the vessel were *custodia legis* expenses)…

See also e.g., Oil Shipping (Bunkering) B.V. v. Sonmez Denizcilik Ve Ticaret A.S., 10 F.3d 176, 182 (3rd Cir. 1993) (providing that "the class of administrative expenses for goods supplied *in custodia legis* is not broad enough to include every post-arrest expense that might add to the value of the *res* when it is sold. Where the district court has not specifically ordered goods or services,

only those expenses that are necessary to preserve the value of the *res* are in the category of *in custodia legis* expenses[]").

To qualify for preferential treatment as an *in custodia legis* expense an expense must be incurred "upon the authority of the court or its officer," and be "for the common benefit of those interested in [the] fund.'" Oil Shipping (Bunkering), 10 F.3d at 182. See also e.g., Fortis Bank (Nederland) N.V. v. M/V SHAMROCK, 379 F. Supp. 2d 2, 7-8 (D. Me. 2005) (same); Dresdner Bank, 465 F.3d at 1272 (discussing that a party is not entitled, under the doctrine of *custodia legis,* to equitable prioritization of a claim for the value of insurance it provided to the vessel after its arrest when it does not first seek or receive the district court's permission for same).

In its motion Midsouth seeks recovery of the following as *in custodia legis* expenses: 1) **$6,962.47** payable to Midsouth for the premium cost associated with the insurance policy during the time the vessel was under arrest at a pro rated rate; 2) **$4,677.00** payable to Midsouth for installation of the fire-detection system; 3) **$1,515.00** payable to the U.S. Marshal as its sales commission for selling the vessel; and 4) **$205.09** payable to Alex Lankford, Esq. (counsel for Midsouth) for the costs to advertise the vessel's sale (an expense which was approved by the Court in the Decree Ordering Sale of Vessel (Doc. 81 at 2) which provides that the advertisement be "taxed as costs"), as he placed the charge on his personal credit card.   Midsouth has also provided appropriate documentation in support of these expenses.

As detailed *supra*, all of the requested expenses were previously authorized by this Court, with the exception of the U.S. Marshal's sales commission for handling the sale of the vessel. However, the Marshals' entitlement to the requested amount for a sales commission is standard in

this District in such circumstances.[1]

Accordingly, upon consideration, it is **ORDERED** that Midsouth's (amended) motion (Docs. 117, 146) is **GRANTED.** As such, the Clerk of Court is **ORDERED** to pay the requested *in custodia legis* expenses from the proceeds of the sale of the M/V BARBARY COAST to Midsouth Bank, N.A., the U.S. Marshal, and Alex Lankford, Esq., as follows: 1) **$6,962.47** payable to Midsouth Bank, N.A. (for insurance premiums); 2) **$4,677.00** payable to Midsouth Bank, N.A. (for installation of the fire-detection system); 3) **$1,515.00** payable to the U.S. Marshal (sales commission); and 4) **$205.09** payable to Alex Lankford, Esq. (advertising costs).

**DONE** and **ORDERED** this the **18th** day of **November 2011.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[1] The U.S. Marshal's office recovers a sales commission when handling the sale of a vessel. This sales commission consists of 3% of the first $1,000 of the sales price plus 1.5% of the remaining balance (of the sales price).